UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTUAN DEMETRIUS MORRIS,

        No. 12-14922

    Plaintiff,        District Judge Victoria A. Roberts

v.        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Antuan Demetrius Morris ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.   PROCEDURAL HISTORY**

    Plaintiff applied for DIB and SSI on December 7, 2009, alleging disability as of June

30, 2007 (Tr. 132-143) Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 28, 2011 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 37). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 40-45), as did vocational expert ("VE") Jacqueline Schalbacker (Tr. 45-47). On April 26, 2011, ALJ Sloss found Plaintiff not disabled (Tr. 15).

On September 7, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-6). Plaintiff filed suit in this Court on November 5, 2012.

## II. BACKGROUND FACTS

Plaintiff, born October 25, 1968, was 42 at the time of the administrative decision (Tr. 15, 132). He graduated from high school (Tr. 158) and worked previously as a automotive detailer, furniture deliverer, maintenance worker, and stocker (Tr. 155). He alleges disability as a result of a fractured right knee cap (Tr. 154).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff received training in truck driving in addition to graduating from high school (Tr. 40). He had not worked since June 30, 2007 for two reasons: (1) he was unable to find work, and (2) knee pain (Tr. 41). He last worked as an interstate car transporter (Tr. 41).

He experienced pain in both knees, but worse in the right (Tr. 41). He underwent knee replacement surgery four months prior to the hearing but continued to experience the symptoms of pain and swelling (Tr. 42-43). He currently took pain medicine and attended

physical therapy (Tr. 42). Plaintiff experienced knee problems since 1986, noting that he had undergone three arthroscopic surgeries on the right knee and one on the left (Tr. 42).

Plaintiff denied other health problems (Tr. 42). Since his knee replacement surgery, he was assigned a "chore provider" who performed grocery shopping and household chores (Tr. 43). He opined that he would be unable to perform work in a sitting position due to knee pain and swelling, adding that he needed to elevate his leg and change positions on a regular basis (Tr. 43-44). In response to questioning by his attorney, he stated that he had been elevating the leg to deal with pain and swelling since June 30, 2007 (Tr. 44).

   **B. Medical Records**

            **1. Treating Sources**[1]

June and July, 2008 treating records state that Plaintiff experienced "chronic" knee pain (Tr. 199, 201). In July, 2009, Plaintiff reported that he had experienced knee pain since the age of 11 (Tr. 196). The same month, Charles K. Safley, M.D. examined Plaintiff, noting Plaintiff's "long history" of knee problems (Tr. 191). An MRI performed the following month showed advanced degenerative changes, spur formation, and loss of cartilage (Tr. 193). In November, 2009, Dr. Safley opined that Plaintiff was not employable in "any kind of occupation that require[d] standing and walking" (Tr. 189). He stated that even after osteochondral transplant surgery, Plaintiff "would still be recommended against any occupation with other than limited standing and walking" (Tr. 189). He stated further

---

[1]Medical records pertaining to conditions unrelated to the disability claim have been reviewed in full but are omitted from the present discussion.

that Plaintiff "would not be employable" for six month following surgery (Tr. 189). March, 2010 treating notes state that Plaintiff continued to experience knee pain and was attempting to obtain insurance coverage before undergoing surgery (Tr. 214). In July, 2010, Dr. Safley recommended knee surgery, noting Plaintiff's complaint that "any amount of activity or chores or errands reproduces right knee pain and swelling . . ." (Tr. 226).

In September, 2010, orthopedic surgeon Norman Walter, M.D. recommended a right knee replacement (Tr. 223). Dr. Walter opined that Plaintiff "would need a sit/stand type job both now and after a knee replacement for the foreseeable future" and a limitation to sedentary work (Tr. 224). In December, 2010, Dr. Walter performed a right knee arthroplasty without complications (Tr. 231-232). In January, 2011, Dr. Walter recommended continued physical therapy, noting that Plaintiff did not exhibit good "motivation" and "like[d] to take pain medication" (Tr. 219). Later the same month, Plaintiff reported that he had fallen twice since knee replacement surgery and now experienced pain and swelling (Tr. 206). Treatment records state that Plaintiff experienced "swelling and popping" of the right knee (Tr. 207). The following month, Dr. Walter prescribed an additional month of physical therapy (Tr. 216).

## 2. Material Submitted Subsequent to the April 26, 2011 Decision[2]

---

[2] Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th

In June, 2011, Dr. Walter observed that Plaintiff exhibited a good range of motion but opined that the fact Plaintiff was "pursuing disability . . . may have some influence on the physical exam" (Tr. 236). In August, 2011, Dr. Walter stated that Plaintiff was unable to return to his previous job "unless [a] restricted job [was] available" (Tr. 234).

### C. Vocational Testimony

VE Schabacker classified Plaintiff's former work as a driver as semiskilled at the light exertional level[3] (Tr. 46). The ALJ asked the VE to assume a hypothetical individual, taking

---

Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." As such, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

The fact that these treating records were not created until the ALJ's opinion constitutes "good cause" for their tardy submission. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 641 (E.D.Mich.2005). However, Plaintiff does not request a "Sentence Six" remand or rely on these records in support of his argument for remand. However, consistent with my recommendation that the case be remanded for further fact-finding under the fourth sentence of § 405(g), the ALJ may consider these records as well as the material previously reviewed. *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994)(consideration of newer evidence permitted in a "Sentence Four" remand); *Huber v. Comm'r of Soc. Sec.,* 2009 WL 111738 at * 11 (E.D. Mich. Jan.15, 2009)(same).

[3]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

into account Plaintiff's age, education, and work experience:

> [H]e can never climb ladders, ropes or scaffolds and can occasionally climb ramps or stairs. He can occasionally balance, stoop, kneel or crawl. Could such a person perform any of the claimant's past work?

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past work but could perform the jobs of surveillance system monitor (500 positions in local economy); assembler (2,000); sorter (2,000); and inspector (2,500) (Tr. 46-47). The VE testified that if the individual were required to elevate his leg "at about waist level or elevate it at a level throughout the day," no work would be available (Tr. 47). She stated that her testimony was not inconsistent with the information found in the Dictionary of Occupational Titles ("DOT")(Tr. 47).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairment of "degenerative joint disease of the knees" but that the condition did not meet or medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [C]laimant is unable to climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs. The claimant also retains the capacity to perform work

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

activity that requires occasional balancing, stooping, crouching, kneeling or crawling (Tr. 13).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past work as a driver, he could work as a surveillance system monitor, assembler, sorter, and inspector (Tr. 15).

The ALJ discounted Plaintiff's allegation that he needed to keep his knee elevated for extended periods, noting that such a restriction was limited to his post-knee replacement recovery period (Tr. 13). The ALJ observed that none of the pre-surgery records supported the need to elevate the knee (Tr. 13). He cited Plaintiff's acknowledgment that he was capable of walking for up to one mile (Tr. 13, 177). The ALJ also cited treating records showing that knee condition improved with surgery (Tr. 13-14). He noted that none of Plaintiff's treating sources had proposed additional surgery (Tr. 14).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either

way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  Plaintiff's Arguments for Remand

Plaintiff argues that the ALJ erred by discounting his claims of limitation as a result of knee pain.  *Plaintiff's Brief* at 8-12, *Docket #8* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).  He contends that claims that knee pain and swelling required him to keep his leg elevated most of the time ought to have been credited.  *Id.* at 9.   Plaintiff argues that the erroneous rejection of his testimony also invalidates the VE's job findings which he contends were based on an incomplete hypothetical question.  *Id.* at 8.  Plaintiff's brief also contains a recitation of the law pertaining to the analysis of a treating source's disability opinion.  *Plaintiff's Brief* at 8-9.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.*

 Plaintiff   disputes the rejection of his claim that he was required to keep his leg

elevated at knee level for significant portions of the day. However, the ALJ's finding on this point does not present grounds for remand. The ALJ supported the credibility determination by noting that such "elevated leg" restrictions were limited to the recovery period following the December, 2010 surgery (Tr. 13). The ALJ also observed that Plaintiff's acknowledged ability to walk for up to a mile (Tr. 177) contradicted his claims that he needed to keep his leg elevated most of the day. On this point, the deference generally accorded to an ALJ's credibility determination is appropriate here. *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)(because "an ALJ is charged with the duty of observing a witness's demeanor and credibility," the "findings based on the credibility of the applicant are to be accorded great weight"). Plaintiff's related argument that the ALJ also erred by not including the need for leg elevation in the hypothetical question is unavailing. Having rejected the claim that Plaintiff was required to elevate his leg most of the time, the ALJ was not obliged to include such a limitation in the hypothetical question posed to the VE. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

### B. Other Bases for Remand

Nonetheless, a review of the transcript reveal other grounds for remand. First, given Plaintiff's uncontradicted need for work with a sit/stand option, the omission of this limitation from the hypothetical question constitutes error.

A sit/stand option, stated either in the RFC or hypothetical question, should include the required frequency of position changes. SSR 96–9,1996 WL 374185, *7 (July 2, 1996)("The RFC assessment must be specific as to the frequency of the individual's need to alternate

-10-

sitting and standing"). Generally, the inclusion of the "at will" option significantly erodes the VE's job numbers. See *Waters v. Commissioner of Social Sec.*, 2012 WL 511998, *3 (E.D.Mich. January 5, 2012) (sit/stand option would reduce light jobs by 50 percent); *Grubb v. Commissioner of Social Sec.,* 2011 WL 846073, *2 (E.D.Mich. February 9, 2011) (sit/stand option reduced existing light jobs by 90 percent). In this case, the omission of a sit/stand option altogether casts doubt on the reliability of the VE's job numbers.

In September, 2010 Dr. Walter opined that Plaintiff "would need a sit/stand type job both now and after a knee replacement for the foreseeable future" and a limitation to sedentary work (Tr. 224). None of the medical records created after this date contradict or even undermine Dr. Walter's opinion that Plaintiff would require a sit/stand option. While Dr. Walter had not yet established a "treating" relationship with Plaintiff in September, 2010, his subsequent records, entitled to the deference of a treating source, are not inconsistent with the initial opinion.[4] To be sure, Plaintiff's December, 2009 admission that he could walk for up to a mile is a sufficient basis for discounting his claim that he needed to keep his leg elevated all day (Tr. 177). However, his ability to walk for up to a mile is not inconsistent with his contention that he required periodic position changes (Tr. 177). None of the reasons the ALJ provided for discounting Plaintiff's credibility provide a basis for rejecting Dr. Walter's opinion regarding a sit/stand option. Because Plaintiff's need for a sit/stand option

---

[4]Notes from the same day state that when Plaintiff was a teenager, Dr. Walter performed a knee surgery (Tr. 223). However, Dr. Walter noted that he had no recollection of treating Plaintiff before September, 2010 (Tr. 223).

is uncontradicted by any evidence, the omission of the limitation from the hypothetical question invalidates the VE's job findings. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003) (Roberts, J.)(job findings made in response to an incomplete set of limitations do not constitute substantial evidence).

The need for a remand on this basis is particularly critical for additional reasons. First, the ability to assess Plaintiff's workplace limitations is hampered by the fact that the record does not contain either a consultative examination or Physical Residual Functional Capacity Assessment. Second, I note that while Dr. Walter's post-surgery treating notes state that physical therapy was prescribed for Plaintiff on a least two occasions (Tr. 216, 219), the transcript does not contain any physical therapy records. While Plaintiff bears the burden of establishing disability, it is unclear whether Plaintiff's attorney neglected to request the physical therapy records or the records were simply lost after placed in custody of the SSA. If the latter scenario applies, remand for the location and review of these records is particularly critical, given the otherwise slim record. *See Whitehead v. Commissioner of Social Sec.,* 2012 WL 603988, *7 (E.D.Mich. 2012)(ALJ's failure to review treating records misplaced by SSA appropriate grounds for remand). Finally, I note that while in November, 2009, Dr. Safley opined that Plaintiff was not employable in "any kind of occupation that require[d] standing and walking"(Tr. 189), the ALJ failed to provide any explanation for declining to adopt the treating source opinion as required by 20 C.F.R. § 404.1527(c)(2).

The final decision is whether to remand this case for an award of benefits or further fact-finding consistent with this opinion. While the failure to include a sit/stand option in the

hypothetical question and the other deficiencies in the administrative review provide grounds for remand, Plaintiff has not established an "overwhelming" case for disability. As such, I recommend a remand for further fact-finding rather than an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing

party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 30, 2013          s/ Steven Whalen
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2013, electronically and/or by U.S. mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable R. Steven Whalen